United States District Court
Southern District of Texas

**ENTERED**

January 21, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEPUTY THOMAS GEHRING,          §
                                §
          Plaintiff,            §
                                §
VS.                             §          Civ. A. H-15-0726
                                §
HARRIS COUNTY, TEXAS, HARRIS    §
COUNTY CONSTABLE, PRECINCT ONE  §
CONSTABLE ALAN ROSEN, ASSISTANT §
CHIEF DONATO "SONNY" COLUNGA,   §
CHIEF DEPUTY KEVIN MAPLES, and  §
CAPTAIN CARL SHAW,              §
                                §
          Defendants.           §

## OPINION AND ORDER OF DISMISSAL

Pending before the Court in the above referenced cause, removed from state court and alleging wrongful demotion and transfer as disciplinary actions, accompanied by inadequate investigations and other due process violations, purportedly in violation of 42 U.S.C. § 1983, the Fourth, Fifth, Fourteenth and Fifteenth Amendments of the United States Constitution, and of Texas Government Code §§ 614.022 and 614.023[1] and of Texas Local

---

[1] Section 614.023 states,

(a) A copy of a signed complaint against a law enforcement officer . . . employed by a political subdivision of this state shall be given to the officer . . . within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

Government Code § 143.127 (Grievance Procedure for municipalities and their fire fighters and police officers), is Defendants Harris County, Texas, Harris County Constable Precinct One, Constable Alan Rosen, Assistant Chief Donato "Sonny" Colunga, Captain Carl Shaw, and Chief Deputy Kevin Maples' motion to dismiss under Federal Rule of Procedure 12(b)(6) and Texas Civil Practices & Remedies Code § 101.106(e)[2] (instrument #3).

### Allegations of Plaintiff's Original Petition (#101)

Plaintiff Deputy Constable Thomas Gehring ("Plaintiff" or "Gehring") worked as a certified police officer with the Harris County Constable Precinct One for twenty-two years, since January 23, 1993.  On June 28, 2013 he was informed that he had been demoted based on three instances of alleged misconduct and violations of sections 1.31, 1.32, 1.34, 1.36 of the Harris County

---

(1) the complaint is investigated; and

(2) there is evidence to prove the allegation of misconduct.

[2] In the election of remedies scheme provided by the Texas Tort Claims Act, pursuant to Tex. Civ. Prac. & Rem. Code § 101.106(a), "the filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the government unit regarding the same subject matter."  Section 101.106(e) states, "If a suit is filed under this chapter [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental entity."  Under this provision, a plaintiff must make an "irrevocable" election and must choose either the governmental unit or its employees to sue. *Reyes v. Bridgwater*, 362 Fed. Appx. 403, 411 (5th Cir. Jan. 22, 2010), *citing Mission Consolidated School Dist. v. Garcia*, 253 S.W. 3d 653, 657 (Tex. 2008).  It does not matter whether the Texas Tort Claims Act allows the claim or not. *Id., citing Garcia* at 658-59.

Precinct One Policy and Ethics Manual (the "Manual"),[3] which accusations Gehring insists are false.  The first occurred on March 14, 2012, when he was stationed in the lobby of the Harris County Criminal Justice Center, when an iPhone was stolen from a belt scanner.  Harris County Constable Precinct One claims that Gehring improperly arrested a suspect in violation of Subsection 1.33 Performance of Duty of the Manual, which did not exist at the time of the arrest, when Gehring made him kneel to prevent his escape and the suspect injured his knee.  Gehring was not disciplined.

On March 26, 2013, Harris County Facilities & Property Management employees found a male cutting his hair in the bathroom at 1001 Preston, Houston, Texas 77002.  When confronted, the man became hostile and loudly argumentative, so the employees ordered him to leave.  The employees followed the man, who continued to exhibit the same behavior.  They called the police, and Deputies Jue and Reyna of the Harris County Constable Precinct One responded, arrested, and handcuffed him.  Gehring arrived on the scene only after the arrest, which Gehring did not witness, but when asked if the officers could take the man to jail, Gehring responded, "yes."  On April 1, 2013 a complaint was made against the arresting deputies including Gehring, but Ghering was not informed about it.  No investigation was made, nor was Gehring given notice, granted a hearing, or presented with a copy of the complaint, signed or unsigned.

---

[3] A copy of the Manual is found at #6-1.

In the third incident on April 22, 2012, Gehring was patrolling when a security guard informed him that an injured man had fallen in the lobby of the Harris County Criminal Justice Center.  Gehring told the injured man that EMS was on the way and that he needed to stay to determine what caused him to fall, but the man insisted on leaving and that he did not need medical treatment.  A complaint, which Gehring claims was false, was subsequently made that Gehring had persuaded the man to refuse medical training.  No investigation was made, Harris County failed to obtain security footage from the lobby where the man fell, and Gehring was never given notice or a hearing, nor was he given a copy of the complaint, signed or not.

On or about May 14, 2013, Captain Carl Shaw asked Gehring to write up the three incidents.  Gehring asked Assistant Chief Donato Colunga if there was a complaint against him and was told there was not.  When he asked Captain Shaw the same question, Gehring was told not to worry.  Then on or about June 27, 2013 Gehring received a letter informing him of his disciplinary probation and demotion.  It stated that Gehring had been accused of violating General Orders in the Manual:  Subsection 1.31 Professional Conduct Required; 132 Conduct Prohibited; 1.34 Performance of Duty; and 1.36 Supervisory Responsibility.  The Manual was only issued to all personnel on May 15, 2013, long after the three alleged incidents took place on March 14, 2013, March 16, 2013, and April 22, 2013 and when Gehring knew and could have known nothing of these yet-to-be-issued policies.  Gehring now sues for violation of the Fourth and Fifteenth Amendments of

-4-

the federal Constitution, identified later in the Petition as the due process clause of the Fifth and Fourteenth Amendments, for Defendants' failure to provide him with notice and a hearing where he could confront his accusers and question witnesses regarding his alleged wrongful demotion and wrongful employment practices, violation of Texas Government Code § 614.022[4] and 614.023[5] because he was not given a copy of any of the complaints against him and disciplinary actions were taken against him, violation of the Texas Local Government Code § 143.127 (the Grievance Procedure),[6] and violation of 42 U.S.C. § 1983.  He further complains that Constable Rosen, Assistant Chief Colunga, Chief Deputy Maples, and

---

[4] Section 614.022 ("Complaint to Be in Writing and Signed by Complainant") provides,

> To be considered by the head of a state agency or . . . local law enforcement agency, the complaint must be
>
> (1) in writing; and
> (2) signed by the person making the complaint.

[5] Section 614.023 ("Copy of a Complaint to Be Given to Officer or Employee") provides in relevant part,

> (a) A copy of a signed complaint against a law enforcement officer of this state . . . or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.
>
> (b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

[6] Defendants correctly point out that by its own terms this provision applies only to municipalities and their fire fighters and police officers, not to the Harris County Constable's Office.

-5-

Captain Carl Shaw committed the alleged acts within the scope of their employment and therefore Harris County and Harris County Constable Precinct One are liable for the actions of their employees under the doctrine of *respondeat superior*. He claims that the four men would be liable if they were private persons. They and Harris County and Harris County Constable Precinct One are not immune from suit because their actions violated § 1983 and the Fourth and Fifteenth Amendments of the United States Constitution and Section 19 of the Texas Constitution, which allows governmental entities to be sued for civil wrongs.

**Relevant Law**

*Procedural Rules*

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  The plaintiff's legal conclusions are not entitled to the same assumption.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement,"

but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the

defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law.  *Id.*  Section 1983 "is a tort statute and . . . '[a] tort to be actionable requires injury,' which, in this context, is the deprivation of a constitutional right." *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002), *citing Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

*Substantive Law*

The Fourteenth Amendment protects citizens from government actions that "deprive any person of life, liberty, or

property, without due process of law." U.S. Const. amend. XIV, §
1. To warrant due process, i.e., notice and a hearing, regarding
an adverse employment decision, a public employee must have a
liberty or property interest in his job.

The meaning of "liberty" is very broad: it not only
includes "the right of the individual to contract, to engage in
any of the common occupations of life. . . and generally to enjoy
those privileges long recognized . . . as essential to the orderly
pursuit of happiness by free men," but "'[w]here a person's good
name, reputation, honor, or integrity is at stake because of what
the government is doing to him, notice and an opportunity to be
heard are essential.'" *Board of Regents of State Colleges v.
Roth*, 408 U.S. 564, 572, 573 (1972), *quoting Meyer v. Nebraska*,
262 U,S. 390, 399 (1923), and *Wisconsin v. Constantineau*, 400 U.S.
433 (1971). Nevertheless, "[i]t stretches the concept [of
liberty] too far to suggest that a person deprived of 'liberty'
when he simply is not rehired in one job but remains as free as
before to seek another." *Id.* at 575, *citing Cafeteria and
Restaurant Workers union, Local 473, AFL-CIO v. McElroy*, 367 U.S.
886, 895 (1961). In *Roth*, an assistant professor at a state
university who did not have tenure was told he would not be
rehired after his first academic year. Finding that the professor
did not warrant a hearing in part because he had no liberty
interest in reemployment because the State "did not make any
charge against him that might seriously damage his standing and
associations in his community,", the Supreme Court opined,

> [T]here is no suggestion that the State, in declining to re-employ the responded, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.  The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities.  Had it done so, this would be a different case. For "[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury . . . ."

*Roth*, 408 U.S. at 573-74.

Alternatively public employees may have a property interest in their jobs, protected by the Due Process Clause:  "if under state law a state employee is granted a claim of entitlement to continued employment absent sufficient cause for discharge, that state employee has been granted a property interest that demands the procedural protections of due process." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). *See also Muncy v. City of Dallas, Texas*, 335 F.3d 394, 398 (5th Cir. 2003)("[W]e have recognized that a property interest is created where the public entity has acted to confer, or alternatively, has created conditions which infer, the existence of a property interest by abrogating its right to terminate an employee without cause.  This abrogation may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated . . . or it may take the form of a more particularized understanding with the employee."). Under Texas law, at-will-employment is presumed unless the relationship between employer and employee has been expressly altered by contract or by rules or policies limiting the conditions under

which an employee may be terminated. *See, e.g., Hicks v. Baylor Medical Center*, 789 S.W. 2d 299 (Tex. App.--Dallas, 1990, writ denied); *Gentilello v. Rege*, 627 F.3d 540 (5th Cir. 2010) *Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *8-9 (N.D. Tex. July 10, 2015)(To survive a motion to dismiss, a plaintiff must "allege the precise source of this alleged property interest," "allege the existence of a contract or employee handbook that negates the at-will presumption," or "any Texas statute, ordinance, or case that might create such a property interest.")

Municipalities and other bodies of local government, which include counties, are "persons" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221. 224 (5th Cir. 2008). "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690-91.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or

policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001).  The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).[7]  Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"  *Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)].  "Allegations of an isolated incident are not sufficient to show

---

[7] When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority."  *Okon*, 426 Fed. Appx. at 316, *citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008).  In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute. *Id.*
      Under Texas law a constable of a Texas county precinct is not a policy-maker in the area of law enforcement. *Keenan v. Tejeda*, 290 F.3d 252, 263 (5th Cir. 2002), *citing Rhode v. Denson*, 776 F.2d 107, 108-10 (5th Cir. 1985)(elected constable of Texas county did not occupy a policy-making position so as to expose the county to civil rights liability for his unconstitutional acts).

the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862. "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985). "Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011). "Usually a plaintiff must show a pattern of

similar violations, and in the case of an excessive force claim .
. . . the prior act must have involved injury to a third party."
*Id.; Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1959).
"[A] single incident of an alleged constitutional violation
resulting from the policy may serve as a basis for liability so
long as that violation was an obvious consequence of the policy.
. . . [A] pattern of misconduct is not required to establish
obviousness or notice to the policymaker of the likely
consequences of his decision." *Brown v. Bryan County, OK.*, 219
F.3d 450, 460 (5th Cir. 2000), *citing City of Canton*, 489 U.S. at
396 ("Where a section 1983 plaintiff can establish that the facts
available to city policymakers put them on actual or constructive
notice that the particular omission is substantially certain to
result in the violation of constitutional rights of their
citizens, the dictates of *Monell* are satisfied.").

A municipality or local governmental entity cannot be
liable under § 1983 on a theory of *respondeat superior*; it can
only be liable for acts that are directly attributable to it
through some official action or imprimatur. *James v. Harris
County*, 577 F.3d 612, 617 (5th Cir. 2009), *cert. denied*, 558 U.S.
1114 (2010). As noted, it can only be held liable under § 1983 if
the plaintiff proves a constitutional violation and an official
policy promulgated by the municipality's policymaker that was the
moving force behind or the actual cause of the unconstitutional
injury. *Id., citing Monell*, 436 U.S. at 694, and *Piotrowski v.
City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The official
policy must either be unconstitutional or have been adopted "with

deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id., citing Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004), and *Piotrowski*, 237 F.3d at 579.

A suit against an individual in his official capacity is treated as a suit against the governmental entity of which the individual is an agent, an employee, official or a representative. *Wilson v. Dallas County*, Civil Action No. 3:11-CV-879-L, 2014 WL 4261951, at *6 (N.D. Tex. Aug. 29, 2014), *citing Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus claims against the deputy constables in their official capacities are treated as claims against Harris County.

Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, _____, 129 S. Ct. 808, 815 (2009). Thus the Court examines whether the "officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Either prong may be addressed first. *Pearson*, 129 S. Ct. at 808. A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v.*

-16-

*Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted). *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions."). To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Id.* at 350, *quoting Anderson*, 483 U.S. at 640. "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012). Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.

2001).  The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*).

Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the Fifth Circuit held that when defendant-official raises a qualified immunity defense in his individual capacity, a heightened pleading standard must be met by the plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense.  In *Schultea v. wood*, 47 F.3d 1427, 1429-34 (5th Cir. 1995)(*en banc*), discussing development of qualified immunity defense and pleading rules, the Fifth Circuit further opined, "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or its own, require

the plaintiff to reply to that defense in detail.  By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.  A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply."  *See also Floyd v. City of Kenner, La.*, 351 Fed. App'x 890, 893 & n.2 (5th Cir. 2009).

In *Morgan v. Hubert*, 335 Fed. Appx. 466, 472-73 (5th Cir. 2009), the Fifth Circuit reviewed *Schultea*'s standard (requiring plaintiff to support a "claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's contact at the time of the alleged acts").  The panel pointed to the reasoning in *Schultea* in requiring a heightened pleading standard in the face of a defendant's assertion of qualified immunity:

> We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions. Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, *at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants* [emphasis added by *Morgan* panel]."  "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

*Morgan*, 335 Fed. Appx. at 469-70, *citing Schultea*, 47 F.3d at 1432-34.

A denial of qualified immunity at the motion to dismiss stage, to the extent that it turns on a matter of law, is an

appealable final decision under 28 U.S.C. § 1291 because qualified immunity is immunity from suit and, necessarily, shields the official from the burdens of discovery. *Ashcroft v. Iqbal*, 129 S. Ct. at 1946.; *Porter v. Valdez*, 424 Fed. App'x 382, 385 (5th Cir. 2011), *citing Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, *4 (5th Cir. Jan. 17, 2002)("Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost.").

The State of Texas has sovereign immunity and its municipalities and political subdivisions have governmental immunity except where the Legislature waived that immunity in the TTCA. *Humphreys v. City of Ganado, Texas*, 467 Fed. Appx. 252, 256 (5th Cir. Mar. 26, 2012), *citing* Tex. Civ. Prac. & Rem. Code § 101.021, and *Reata Constr. Corp. v. City of Dallas*, 197 S.W. 3d 371, 374-76 (Tex. 2006). The terms "sovereign immunity" and "governmental immunity" are not synonymous; "sovereign immunity relates to the State of Texas' immunity from suit and liability," while "governmental immunity" protects cities, counties, school districts and other political subdivisions from suit and liability. *Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2014 WL 4851576, at *6 fn. (N.D. Tex. Sept. 30, 2014), *citing Wichita Falls State Hosp. v. Taylor*, 106 S.W. 3d 692, 694 n.3 (Tex. 2003). The Texas Legislature's limited waiver of sovereign immunity is for tort claims arising out of the use of publicly owned automobiles, for premises defects, and for injuries arising out of conditions or use of property. Tex. Civ. Prac. & Rem. Code

§ 101.021.  It does not waive immunity for intentional torts, such as assault and battery, malicious prosecution, false arrest.  Tex. Civ. Prac. & Rem. Code § 101.057.  *See, e.g., Muhammad v. Newell*, 3-08-CV-1426-BD, 2009 WL 2482142, at *3 (N.D. Tex. Aug. 12, 2009)(limited waiver of TTCA "does not extend to claims 'arising out of assault, battery, false imprisonment, or any other intentional tort"); *Chalmers*, 2014 WL 1778946, at *4 (false imprisonment).

        Under the TTCA, which "covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity," "'[i]f suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'"  Tex. Civ. Prac. & Rem. Code § 101.106(e); *Gil Ramirez Group, LLC v. Houston I.S.D.*, ____ F.3d____, 2015 WL 2383797, at *11 (5th Cir. May 18, 2015), *citing Mission Consol. I.S.D. v. Garcia*, 253 S.W. 3d 653, 658 (Tex. 2008)(interpreting § 101.106(e) to cover all tort claims, including those for which immunity was waived by the TTCA).  *See also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (Tex. 2010)(any state common law tort claim brought against a governmental unit and its employees, including intentional torts, will allow the employee defendants to be dismissed if the governmental unit moves to do so).  In such a circumstance, a plaintiff's claims against defendants in their individual capacities are statutorily barred by § 101.106(e) because under § 101.106(a), "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable

election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."  The same is true under Tex. Civ. Prac. & Rem. Code § 101.106(f)[8] if the employees have been sued in their official capacity.  *Morales v. City of Sugar Land*, No. Civ. A. H-13-3575, 2015 WL 162203, at *7 (S.D. Tex. Apr. 9, 2015), *citing Stinson v. Fontenot*, 435 S.W. 3d 793, 794 (Tex. 2014)(*per curiam*).  The Legislature passed § 101.106 to prevent lawsuits against governmental employees that would in actuality be second attempts at recovery for the same claim.  *Lowe v. Teator*, 1 S.W. 3d 819, 822 (Tex. App.--Dallas 1999, pet. denied).

---

[8] Section 101.106(f) provides,

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be one against the employee in the employee's official capacity only.  On the employee's motion, the suit against shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the government unit as defendant on or before the 30th day after the date the motion is filed.

In contrast to sovereign immunity,[9] which protects governmental entities from liability, under Texas law official immunity is an affirmative defense that protects a public official from individual liability where he conclusively establishes that he is (1) performing discretionary duties (2) that are within the scope of his authority, (3) provided that he acts in good faith. *Telthorster v. Tennell*, 92 S.W. 3d 457, 461 (Tex. 2002); *City of El Paso v. Heinrich*, 284 S.W. 3d 366, 380 (Tex. 2009).

**Defendants' Motion to Dismiss (#3, Memorandum #4)**

---

[9] In Texas sovereign immunity protects the State and various divisions of state government, including agencies, boards, hospitals, and universities, and governmental immunity protects its political subdivisions, including cities, from lawsuits for money damages unless that immunity has been waived. *Texas Natural Resource Conservation Comm'n v. IT-Davy*, 74 S.W. 3d 849, 853 (Tex. 2002); *Wichita Falls State Hosp. v. Taylor*, 106 S.W. 3d 692, 694 n.3 (Tex. 2003). Section 101.021 of the Texas Civil Practices and Remedies Code waives sovereign immunity in very limited circumstances: "A governmental unit in the state is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
>
> > A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

As a threshold matter, Defendants note that Harris County and Harris County Constable Precinct One are the same juridical entity, hereinafter referenced as "Harris County."

Defendants insist that Gehring has failed to state a claim under § 1983 against any of the four individuals, failed to allege facts that would establish any deprivation of his clearly established constitutional rights by their actions and to overcome their qualified immunity, as required under the heightened pleading standard established in *Elliot v. Perez*, 751 F.2d 1472. The deprivation of a right under state law is not enough to state a claim under § 1983 and the statute does not "constitutionalize" state law. *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Gehring must identify specific actionable conduct by each defendant and show that the alleged constitutional violation was intentional and not merely negligent. *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986). Instead Gehring's incorrect invocations of the Fourth (prohibiting unreasonable searches and seizures), Fifth (which applies only to the federal government), and Fifteenth (denial of the right to vote based on race, color or previous condition of servitude) Amendments are inapposite to the facts here.

The Fourteenth Amendment's due process right is also inapplicable. An employee to have a due process claim must show he has a property interest in his job. *Perry v. Sindermann*, 408 U.S. 593, 599 (1972). To establish a property interest in a public employee job, a plaintiff must show that the public entity expressly and knowingly relinquished its right to terminate that employee except for cause. *Muncy v. City of Dallas, Texas*, 335

F.3d 394, 398 (5th Cir. 2003)("This abrogation may take the form of a statute, rule, handbook, or policy which limits the condition under which employment may be terminated" or "a more particularized mutual understanding with the employee"), *citing Gilbert v. Homar*, 520 U.S. 924 (1997); *Sindermann*, 408 U.S. at 602-03; and *Stapp v. Avoyelles Parish Sch. Bd.*, 545 F.2d 527 (5th Cir. 1977).  In Texas employment-at-will is presumed unless that relationship has been expressly altered by contract or by rules or policies limiting the conditions under which an employee may be discharged.  *Muncy v. City of Dallas, Texas*, 335 F.3d at 398.  It is the employee's burden to prove that the presumed at-will relationship was altered.  *Dworkschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W. 3d 191, 196 (Tex. App.--Houston [14th Dist.] 2011, no pet.).  It is well established that Harris County Constable Deputies are employees at-will.  *Renken v. Harris County*, 808 S.W. 2d 222 (Tex. App.--Houston [14th Dist.] 1991)(Deputy constable Renken's status as an "at-will" employee barred his reinstatement); *Gillis v. Wooten*, No. 14-03-01134-CV, 2004 WL 1406299, at *3 (Tex. App.--Houston [14th Dist.] 2004)("Generally, deputy constables are considered at-will employees as they are hired for an unspecified period and are subject to the 'virtually unbridled authority' held by the constable with regard to hiring and firing.  With no expectation of future employment, the at-will employee holds no constitutionally protected property interest."), *citing Renken*, 808 S.W. 2d at 226, and *Montgomery County Hosp. Dist. v. Brown*, 965 S.W. 2d 501, 504 (Tex. 1998).  Defendants insist that Gehring

has no property interest in his job, and therefore he has no due process claim under the Fourteenth Amendment for a discharge, no less a demotion or transfer.

Even if he were able to show a constitutional deprivation, Gehring fails to state a claim against the individual Defendants (Rosen, Colunga, Maples and Shaw) because he cannot overcome their qualified immunity defense. "When a defendant invokes [qualified] immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense" by satisfying a heightened pleading standard requiring specific facts with sufficient particularity to meet all the elements of the claim and those necessary to negate the qualified immunity defense). *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989). To do so, Gehring would have to show that no reasonable government official could have believed the accused officials' alleged conduct was lawful in light of the information he possessed and clearly established law. *Mendenhall v. Riser*, 213 F.2d 226, 231 (5th Cir. 2000). Gehring has not pleaded any particular facts regarding any of the four individual officers, has not shown any violation of clearly established rights or a constitutional violation, has not identified any basis for a property interest in his job, and has not overcome Defendants' qualified immunity defenses. He makes no specific allegations against Rosen and Maples, and his only charges regarding Colunga and Shaw is Shaw's instruction to Gehring to write up the three incidents and Colunga and Shaw's responses to

Gehring's question if there was a complaint against him.  These statements do not demonstrate that the individual Defendants' conduct was unreasonable in light of clearly established law. Therefore, Gehring fails to overcome their qualified immunity and the allegations must be dismissed.

Because Gehring has failed to state the derivation of a constitutional federal right, he has no claim against Harris County.  Even if he had, as noted, governmental liability under § 1983 cannot be based on respondeat superior.  *Monell,* 436 U.S. 691.  Here Gehring's allegations against Harris County are only based on a theory of respondeat superior.  Original Petition, #1-1, at p. 10.  To hold the County liable, he must, but has not alleged a policy maker, an official policy, and a violation of his constitutional rights whose moving force is a policy or custom. *Id.* at 694.  "The existence of official policymaking authority is a question of law to be decided by the court." *Tharling v. City of port of Lavaca*, 329 F.3d 422, 430-31 (5th Cir. 2003).  Gehring has failed to provide a required factually specific description of the obligatory policy or custom.  He has not shown the mandatory policy-making governmental official who has knowledge of an alleged unconstitutional custom and that through its deliberate conduct, the County was the moving force behind, or cause in fact of, the constitutional injury alleged or that there is a direct link between the County's policy and the constitutional deprivation. *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002); *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397,  404 (1997); *Piotrowski*, 237 F.3d at 578-79;

*Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Gehring has failed to identify any unconstitutional policy of Harris County. Indeed, Defendants further contend that Plaintiff has asserted that they acted contrary to, not in accordance with, County policy in asserting that they failed to follow the County policy of adequately investigating complaints in accordance with section 3.03 of the Harris County Precinct I Policy and Ethics Manual.

Defendants contend that Gehring's claim under the Texas Government Code is barred by the County's governmental immunity, which the Texas Legislature has not waived under § 614 from claims for damages. *City of Seagovill v. Lytle*, 227 S.W. 3d 401, 407-10 (Tex. App.-Dallas 2007, no pet.)(city immune from monetary damage claim under Texas Government Code §§ 614.022-023).

Similarly Gehring's claims against the individual Defendants are barred by derivative immunity under the Texas Tort Claims Act § 101.106(e). Plaintiff chose to sue both Harris County and the individual employees of Harris County, so state law claims against the individual employees must be dismissed pursuant to this motion for dismissal from Harris County.

Texas official immunity is substantially like the federal law of qualified immunity. *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 658 (5th Cir. 2004). A public official or governmental employee is entitled to official immunity if he was (1) acting within the scope of his authority, (2) in performing a discretionary duty, and (3) in good faith. Even if the act was wrongly or negligently performed, it is still within the scope of

authority.  *City of Lancaster v. Chambers*, 883  S.W. 2d 650, 658
(Tex. 1994).  Official immunity also bars Plaintiff's state law
claims.  To defeat a defendant's claim of good faith, Gehring must
establish that no official in the defendant's position could have
believed the facts justified his conduct.  *Telthorster*, 92 S.W. 3d
at 460.  What allegations Gehring does make show the individual
Defendants were performing discretionary duties within the scope
of their authority in good faith.  Thus Plaintiff's claims under
the Texas Government Code and any other statutory provision are
also barred by official immunity.

Last  of  all,  Defendants  maintain  that  Gehring
misconstrued Texas Government Code § 614.022, which presupposes
that a written signed complaint has been made by a victim, not a
law  enforcement  agency's  internal  observation.   There  is  no
allegation that the County received a complaint about Gehring from
a  third-party  alleged  victim,  no  less  a  tangible  complaint  which
could  be  provided  to  him  under  § 614.   By  its  own  terms  the
Chapter "applies only to a complaint against a peace officer."
Tex. Gov't Code § 614.021(a)(3).  Gehring does not assert that any
of the alleged victims in the three incidents signed a written
complaint against him that was the basis of the disciplinary
measures taken against Gehring, but which was not provided to him
before those measures were taken.  Thus Gehring has failed to
state a plausible claim under the Texas Government Code.

As  a  final  matter,  Defendants  request  an  award  of
attorney's fees as sanctions under Rule 11(c) of the Federal Rules
of Civil Procedure because Gehring's allegations are frivolous and

because he pursued them even after Defendants notified him of their baseless nature.

### Gehring's Response (#6)

Gehring conclusorily asserts that a Rule 12(b)(6) motion may only be granted if, assuming all allegations in the complaint are true and viewing them in a light most favorable to the Plaintiff, a court finds that Plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 127 S. Ct. at 1955. He claims that the Supreme Court has opined that a defense of immunity is an inappropriate ground to dismiss a complaint:  "This Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action . . . ."  *Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980).  Furthermore, Gehring contends that Defendants cannot assert the immunity of police officers to immunize them from liability.  *Id.*

### Defendants' Reply (#8)

Defendants maintain that they have shown that Gehring has failed to state a plausible claim against any of the Defendants in the case.  The Court does not summarize in detail Gehring's response because it agrees with Defendants that the Court's review is restricted to the complaint and its attachments, that Plaintiff's conclusory assertions are insufficient to state a claim, and that Plaintiff's response "is, essentially, a repeating and rehashing of the baseless and legally unavailing allegations of his Complaint."  #8 at p.1.  Gehring also erroneously rejects the well established heightened pleading

requirement for qualified immunity and ignores the controlling law cited by Defendants.

### Defendants' Reply (#8)

Defendants reiterate points previously made.

### Gehring's Reply (#9)

Gehring repeats his objections in his response and insists that Defendants are incorrect.

### Court's Decision

The Court has laid out the law and agrees with Defendants' arguments in their motion to dismiss, well supported by authority and factual allegations in the petition that he fails to and cannot state a claim for which relief can be granted. Moreover, allowing amendment would be futile, as Gehring clearly has not and cannot plead a constitutional violation on the facts in his complaint, he is an at-will employee without a property or liberty interest[10] in his employment to support a due process claim under the Fourteenth Amendment even if one were viable based on his demotion and transfer, and he cannot overcome the immunity defenses again based on the factual allegations in the Petition.

---

[10] Although Ghering was demoted and transferred, he has not alleged facts that would even come near to suggesting that this adverse employment decision reached the level of besmirching his good name, reputation, honor and integrity to the point of damaging his standing and associations in the community or depriving him of even current employment, no less a future opportunity for such. *Roth*, 408 U.S. at 573-74. Indeed, there is no allegations that the demotion and transfer were even made public except by Gehring in filing this suit. As the Supreme Court commented in *Paul v. Davis*, 424 U.S. 693, 710 (1976), "Certainly there is no suggestion in Roth to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee."

Not only did his Petition fail to state a claim for which relief can be provided, but his various subsequent submissions fail to assert any facts or cite any law that can save his suit.  Thus the Court grants Defendants' motion to dismiss.

      Final judgment will issue by separate document.

      **SIGNED** at Houston, Texas, this  21st  day of  January ,
2016.

                                    MELINDA HARMON
                       UNITED STATES DISTRICT JUDGE